UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:  Ling Wang,

                Debtor.

Case No.  13-31150
Chapter 7

Roger Berman,

                Plaintiff,

v.

Empower FCU and Ling Wang,

                Defendant.

Adv. Proc. No. 15-50002

FILED 2016 AUG 11 AM 10: 36 CLERK OF THE BANKRUPTCY COURT N.D. OF NY SYRACUSE

Anthony N. Elia, Esq.
Miller Mayer
202 East State Street, 7th Floor
P.O. Box 6435
Ithaca, NY  14851-6435

appearing for *Plaintiff Roger Berman*

Anthony R. Hanley, Esq.
Costello, Cooney & Fearon, PLLC
5701 West Genesee Street
Camillus, NY  13031

appearing for *Defendant Empower FCU*

**Memorandum-Decision and Order Granting Defendant's Motion for Summary Judgment**

Before the court is Defendant Empower Federal Credit Union's ("Empower's") motion for summary judgment seeking dismissal of Plaintiff Roger Berman's claims (Doc. 29) ("Motion").[1] Plaintiff seeks to recover $70,000 from Empower on a constructive trust theory.[2]

---

[1] Empower originally moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). The court converted the motion to one for summary judgment under Fed. R. Civ. P. 12(d) in its Memorandum-Decision of January 29, 2016, (Doc. 49).

[2] The court previously granted Empower's motion to dismiss counts for turnover under 11 U.S.C. §§ 542 and 549.

1

Plaintiff lent $70,000 to Debtor's live-in partner, Peter Beaudry for a purported business deal which he claims was extended under false pretenses.[3] In fact, the $70,000, which was sent via two wire transfers and deposited into Debtor's bank accounts, was primarily used to cure mortgage arrears of $59,715.74 ("Cure Payment")[4] and halt Empower from foreclosing against Debtor Ling Wang's residence where she, Peter Beaudry and their child lived.

It is Plaintiff's position that Empower was unjustly enriched and should be ordered to disgorge the funds. Plaintiff claims that Empower's acceptance of the Cure Payment from Debtor (i) exceeded the automatic stay relief previously accorded Empower, and (ii) violated provisions of the Confirmation Order as an unauthorized post-petition borrowing by the Debtor and an unauthorized transfer of property. Plaintiff contends that Empower knew or should have known that the funds were not earned by Debtor and were fraudulently obtained based upon Debtor's disclosures in her bankruptcy case. Plaintiff requests that this court invoke its equitable powers to accord him relief under 11 U.S.C. § 105.[5]

Empower claims to have had no prior relationship with Plaintiff and no knowledge regarding the source of the funds it received. Empower asserts that it lawfully acted within its rights as a secured creditor and seeks summary judgment dismissing the claims in their entirety.

The record on summary judgment consists of the pleadings filed in connection with the Motion.[6] Additionally, the court takes judicial notice of the proceedings related to the Debtor's and Beaudry's bankruptcy cases, as noted, which are a matter of public record.

---

[3] Beaudry filed his own chapter 7 case on November 6, 2014 (14-31734) and was denied a discharge on April 8, 2016 (Adv. Proc. 15-50013). He was also a debtor in six prior bankruptcy cases filed from 1997 to 2009: (97-67492), (03-65344), (06-34400), (07-30941), (07-32585), and (09-32508).

[4] Since the record reflects that Empower only received $59,715.74 of the initial $60,000 wire transfer and no part of the second wire transfer of $10,000 deposited into an account maintained at First Niagara Bank, N.A., Plaintiff's claim is limited to that extent.

[5] Title 11 is hereinafter referred to as the "Bankruptcy Code" or "Code."

[6] Empower's Motion consists of:

2

For the reasons discussed below, the Motion is granted.[7]

## Jurisdiction

The court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(b) (2)(O).

## Undisputed Background Facts

Debtor and her boyfriend, Peter Beaudry ("Beaudry"), resided in a single-family house in Cortland, New York which was titled in the Debtor's name. ("Property"). The Property was the subject of a foreclosure action and a judgment of foreclosure and sale was entered in state court that was stayed by the filing of this case. Claims filed in Debtor's case total $354,309.16. Empower's secured claim at $232,305.29 represents 65% of the filed claims. The Debtor's confirmed chapter 13 plan provided for payment to Plaintiff of 2.23% of his unsecured claim of $70,000 or $1,561.00.

---

**(i)** Affidavit of Empower's real estate collections manager, Jessica Redhead, sworn to on September 11, 2015, with exhibits A through J (Docs. 39-1 through 39-10) ("Redhead Affidavit"). The exhibits include the following: Ex. A – $217,000 Note dated 12/05/2007 from Debtor to Empower ("Note"); Ex. B – Mortgage recorded on 12/10/2007, from Debtor to Empower ("Mortgage I"); Ex. C – Mortgage recorded on 12/02/2011 from Debtor to Empower ("Mortgage II"); Ex. D – Debtor's Account Agreement with Empower relative to her checking account; Ex. E – Empower's Proof of Claim filed 07/11/2013; Ex. F – Debtor's Chapter 13 Plan (Case No. 13-31150, Doc. 11) ("Plan"); Ex. G – Order of Confirmation (Case No. 13-31150, Doc. 35) ("Confirmation Order"); Ex. H – Conditional Order terminating automatic stay as to Debtor's residence on motion of Empower (Case No. 13-31150, Doc. 25) and Order terminating automatic stay as to Debtor's residence (Case No. 13-31150, Doc. 38) ("Order Terminating Stay"); Ex. I – Notice of Pendency of Empower's mortgage foreclosure action, Summons and Complaint in the foreclosure action; and Ex. J – Appraisal of Debtor's residence dated 06/04/2015;
**(ii)** Affidavit of Attorney Anthony Hanley, sworn to on September 11, 2015, together with exhibits 1 through 4 (Docs. 39-11 through 39-15) ("Attorney Affidavit"). The exhibits to the Attorney Affidavit include: Ex. 1 – Amended Complaint; Ex. 2 – Order on original motion to dismiss; Ex. 3 – Order Converting Debtor's case from a chapter 13 to chapter 7 (Case No. 13-31150, Doc. 73); and Ex. 4 – Letter from chapter 7 trustee confirming Debtor's failure to appear at two scheduled 341 meetings of creditors; and
**(iii)** a memorandum of law (Doc. 39-16).

Plaintiff filed a memorandum of law in opposition to the Motion (Doc. 45). Subsequent to this court's conversion of the Motion to summary judgment (Doc. 49) and in response to the opportunity to make further submissions, Plaintiff filed a second memorandum of law (Doc. 50). Plaintiff, however, has filed no affidavits or submitted any proof in opposition to the Motion. Nor did Plaintiff request additional time to conduct further discovery as permitted by Fed. R. Civ. P. 56(d).

[7] This memorandum-decision incorporates the court's findings of fact and conclusions of law as permitted by Federal Rule of Bankruptcy Procedure 7052.

3

Debtor defaulted in making her post-petition mortgage payments. Empower moved for relief from stay, and the court terminated the stay "to permit [Empower] to commence and carry out to completion a foreclosure action" with respect to the Property.[8] After relief was granted, Empower noticed a foreclosure sale.

In April 2014, Beaudry told Plaintiff that he had an excellent business opportunity, but did not have enough personal funds to close the deal. Plaintiff and Beaudry were long-time friends from college. Beaudry represented that if Plaintiff would loan him $60,000, the deal would close in June 2014, and there would be sufficient funds to repay Plaintiff in full. Plaintiff relied upon Beaudry's representations. At Beaudry's direction, three days prior to the foreclosure sale, Plaintiff wired $60,000 to Debtor's bank account at Empower. Plaintiff's understanding was that Beaudry and the Debtor were working on the "business deal" together. However, there was no pending business deal and Beaudry did not repay Plaintiff as promised.[9] Of the $60,000 deposited into Debtor's account at Empower, the Cure Payment ($59,715.14) was immediately transferred by the Debtor to Empower to cure mortgage arrears and avoid the pending foreclosure sale. Empower accepted the Cure Payment, discontinued its foreclosure action and reinstated the Debtor's mortgage.

As established by Ms. Redhead's affidavit, neither she nor any other Empower employee made any representations to Plaintiff regarding the wired funds nor communicated with either Beaudry or Debtor as to the source of the wired funds.[10]

---

[8] See Doc. 38 in 13-31150.
[9] This was the subject of a separate suit Plaintiff commenced against Beaudry to have the debt declared nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A). (Adv. Proc. No. 15-50003). When the court denied Beaudry a discharge in a separate adversary proceeding commenced by the Office of the United States Trustee (Adv. Proc. No. 15-50013), the suit was withdrawn.
[10] Redhead Aff. ¶¶ 20-22.

4

### *Standard for Summary Judgment*

Fed. R. Civ. P. 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). When the movant has demonstrated 'the absence of a genuine issue of material fact,' *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the opposing party must come forward with *specific evidence* demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (emphasis added). The non-movant must show there are triable issues and cannot rely merely on pleadings containing allegations or denials. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "A party asserting that a fact…is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions,…affidavits, admissions…or other materials…." Fed. R. Civ. P. 56(c)(1)(A). The court may consider as undisputed any fact not properly supported or addressed. Fed. R. Civ. P. 56(e).

On summary judgment, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). The court must also consider the burden of proof the moving party would face at trial and award judgment against a party who has failed to make a sufficient showing on an essential element of a dispositive issue on which it shoulders the burden. *Celotex Corp.*, 477 U.S. at 322-23.

5

*Discussion*

*Claim I: Constructive Trust and Unjust Enrichment*

Plaintiff claims that Empower was unjustly enriched by the Cure Payment and that the court should impose a constructive trust. Under New York law, to establish a constructive trust claim, a plaintiff must establish four elements: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992) (collecting New York cases). Unjust enrichment constitutes the "key factor" in determining whether a constructive trust should be imposed. *Id.* at 354 (citing *Cavallaro v. Lewis*, 98 N.Y.S. 2d 730, 731 (Sup. Ct. 1950)). "[T]he purpose of a constructive trust is prevention of unjust enrichment." *In re First Central Financial Corp.*, 377 F.3d 209, 212 (2d. Cir. 2004) (citing *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978)).

To establish a claim for unjust enrichment under New York law, a plaintiff must show "that (1) defendant was enriched (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citing *e.g.*, *Clark v. Daby*, 751 N.Y.S.2d 622, 623 (2002)). "A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties." *Sharp v. Kosmalski*, 351 N.E.2d 721, 724 (1976). The burden of proof to establish a constructive trust is clear and convincing evidence.[11] *In re MBM Entm't, LLC*, 531 B.R. 363, 414 (Bankr. S.D.N.Y. 2015).

---

[11] As discussed *infra*, the imposition of a constructive trust is the only equitable remedy sought that could defeat the Trustee's Code § 544 avoidance powers.

6

*Confidential or Fiduciary Relationship and a Promise, Express or Implied and a Transfer made in Reliance thereon*

Plaintiff cannot prevail on his unjust enrichment claim unless he had a sufficiently close relationship with Empower. *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (2012) (citing *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16 (2007)). "[W]hile 'a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment,' there must exist a relationship or connection between the parties that is not 'too attenuated.' " *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d at 746 (citing *Sperry v. Crompton Corp.*, 8 N.Y.3d at 215–16). Here, the record is devoid of any evidence to support a finding that a relationship existed between Plaintiff and Empower. The record similarly fails to establish facts to support a finding that Empower promised Plaintiff anything upon which Plaintiff relied when making the loan to Beaudry. Plaintiff has submitted no evidence that there was any communication between Empower and Plaintiff.

There is not a scintilla of evidence that Ms. Redhead or any Empower employee ever (i) made any representations to Plaintiff concerning the wired funds, (ii) communicated with Beaudry as to the source of the wired funds, or (iii) was informed by Debtor or anyone else as to the source of the wired funds. Plaintiff's general allegation to the contrary does not properly controvert Ms. Redhead's sworn statement. Pursuant to Fed. R. Civ. P. 56(c) and (e), the court considers as undisputed the fact that there was no relationship between Plaintiff and Empower and Empower made no promise to Plaintiff upon which Plaintiff relied when transferring the funds.

*Unjust Enrichment*

The court finds that Empower, subsequent to obtaining the Order Terminating Stay, accepted the Cure Payment in lieu of continuing the foreclosure action. The court rejects, however, Plaintiff's interpretation of the legal effect of the Order Terminating Stay—that Empower acted

7

outside of the grant of relief when it accepted the Cure Payment instead of foreclosing its mortgage. Plaintiff reads the Order Terminating Stay too narrowly by suggesting that Empower was permitted *only* to continue its foreclosure action. The Order Terminating Stay modified the automatic stay to permit Empower to exercise any and all of its rights as a secured creditor including, among other things, continuing its foreclosure action. Absent limitations or prohibitions, an order that terminates the automatic stay permits a secured creditor to exercise all of its rights and remedies under relevant loan documents and state law, including negotiating and compromising a claim, accepting a cure amount, reinstating loan terms, or commencing/continuing a foreclosure action. *See Fidelity Nat'l. Bank v. Winslow (In re Winslow)*, 39 B.R. 869, 871 (Bankr. N.D. Ga. 1984). "An order which lifts the automatic stay returns the parties to the legal relationships that existed before the stay became operative." *Id.* The non-bankruptcy law that "governed the transactions and relationships of the parties prior to" imposition of the stay "is the law which controls the conduct of the parties once the stay is lifted." *Id.*

Once the Order Terminating Stay was entered, New York law controlled and the parties' rights flowed from the relevant loan documents. Empower acted within its rights to accept the Cure Payment and discontinue its foreclosure action. Based upon these facts, the court cannot draw the legal inference that Empower was unjustly enriched.

*Alleged Violations of Article IX and X of the Confirmation Order*

Plaintiff claims that Empower was unjustly enriched by accepting the Cure Payment without first having obtained court approval in alleged violation of Articles IX and X of the

8

Confirmation Order.[12] The provisions of a confirmed plan are binding upon a debtor and creditor.[13] Once a creditor, however, obtains relief from the automatic stay on account of post-confirmation defaults, the creditor is no longer bound by the terms of the confirmed plan. *See In re Miano*, 261 B.R. 391, 392 (Bankr. D.N.J. 2001). The *Miano* court held that "[t]he controlling principle is ultimately one of equity: if a debtor fails to fulfill his obligations under a plan, he cannot reasonably expect his creditors to remain bound by it." *Id.* Thus, upon obtaining the Order Terminating Stay, Empower was no longer bound by the terms of the Confirmation Order and it did not need this court's approval to accept the Cure Payment.

Debtor's failure to obtain court approval prior to tendering the Cure Payment cannot be attributed to Empower. Empower was not bound by the requirements of the Confirmation Order at the time it accepted the Cure Payment. The fact that the Debtor shirked her obligations under the plan as further enumerated in the Confirmation Order and violated that Order has no bearing on Empower's rights as a secured creditor on the facts presented. The court finds and concludes that Empower was not unjustly enriched when it accepted the Cure Payment without prior court approval.

---

[12] Articles IX and X of the Confirmation Order provide as follows:
**ARTICLE IX: PROHIBITION ON POST-PETITION DEBT**
It is further ORDERED that Debtor is prohibited from incurring any debt in excess of $1,500.00 without prior approval of the Trustee or the court, except such debt as may be necessary for emergency medical or hospital care of the Debtor or Debtor's dependents.

**ARTICLE X: SALES OR TRANSFERS OF PROPERTY DURING THE PLAN TERM**
It is further ORDERED that no property may be sold or transferred without the approval of the court or the Trustee. Notwithstanding any provision of the Plan or this Order, no article of property, real or personal, with any value of less than $2,500.00 may be sold, transferred or otherwise disposed of, without the prior consent of the Trustee and no article of property, real or personal, with any value of more than $2,500.00 may be sold, transferred or otherwise disposed of, without prior order of this court. (Doc. 35) entered on January 16, 2014.

[13] Bankruptcy Code § 1327.

Plaintiff claims that Empower (i) knew or should have known of Debtor's and/or Beaudry's alleged fraud and (ii) had a duty to inquire as to the source of the funds used by Debtor to make the Cure Payment. This legal argument is lacking both in a factual predicate and legal merit. The Redhead Affidavit directly controverts the conclusory allegations in the Amended Complaint that Empower "knew or should have known that the funds were fraudulently obtained." Plaintiff has identified no specific facts that show that Empower's knowledge is a triable issue of fact. Plaintiff cites to no materials in the record to support his assertion and, pursuant to Fed. R. Civ. P. 56(e), this court considers as undisputed the fact that Empower did not know that the funds were fraudulently obtained.

Not only do the facts not support Plaintiff's claim, but for this court to hold that a third-party commercial lender has a duty to investigate the source of a borrower's funds would likely serve to disrupt even the most routine commercial transactions. Armed with the Order Terminating Stay, Empower was within its rights to accept the Cure Payment, reinstate the loan terms, foreclose its mortgage and otherwise act consistent with its loan documents and state law. Plaintiff cites no law to support its argument that Empower had a duty to investigate the funding source. This court finds that Empower did not know nor did it have a duty to investigate the source of funding.

*Whether it is inequitable for Empower to retain the Cure Payment*

There is no basis to find that it would be inequitable for Empower to retain the Cure Payment. Empower gave value in exchange for the Cure Payment, and, therefore, took the funds free of any constructive trust. Empower gave value when it forebore on its right to foreclose on the Property and instead reinstated the mortgage upon receipt of the Cure Payment. Even if a constructive trust was imposed, Empower would be under no duty to restore to Plaintiff the Cure Payment.

> The principle that a person who innocently has acquired the title to property for which he has paid value is under no duty to restore it to one who would be entitled to reclaim it if he had not been innocent or had not paid value therefor, is of wide application, being a limitation upon the principle that a person who has been wrongfully deprived of his property is entitled to restitution. The question in such cases is which of two innocent persons should suffer a loss which must be borne by one of them. The principle which is applied by courts of equity is that they will not throw the loss upon a person who has innocently acquired title to property for value. The bona fide purchaser is not only entitled to retain the property free of trust, but he is under no personal liability for its value.

Restatement (First) of Restitution § 172 cmt. a (1937).

In conclusion, Plaintiff has not established by clear and convincing evidence that (i) Plaintiff and Empower had a confidential relationship, (ii) Empower made a promise upon which Plaintiff relied when making the loan to Beaudry, (iii) Empower was unjustly enriched, and (iv) it would be inequitable for Empower to retain the Cure Payment. Further, Empower acquired the Cure Payment for value by giving up its right to continue its foreclosure action and reinstating the terms of Debtor's mortgage. Thus, Empower is a bona fide purchaser for value entitled to retain the Cure Payment free of any potential constructive trust.

*Claim II – Recovery of Money Pursuant to Bankruptcy Code § 105*

Plaintiff's sole basis for invoking this court's equitable powers is based upon Bankruptcy Code § 105. Plaintiff, however, fails to appreciate that section 105 is not a stand-alone basis for a claim. Rather, section 105 authorizes a bankruptcy court to exercise equity only "in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003). "This language 'suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective.' " *Id.* (quoting 2 COLLIER ON BANKRUPTCY ¶ 105.01[1]); *see also United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (stating that section 105 does not "authorize the bankruptcy courts to create

substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity"). Plaintiff has not established a claim under section 105 because section 105 may not be used (i) in connection with Plaintiff's other claims, which are grounded in equity and not based upon a provision of the Bankruptcy Code, nor (ii) as the sole basis for a sustainable claim against Empower.

### Conclusion

Empower has established that there is no dispute as to any material fact and that it is entitled to judgment as a matter of law. The Motion for summary judgment is granted and a separate judgment will be entered dismissing the Amended Complaint as to Empower in accordance with Fed. R. Bankr. P. 7058.

So Ordered.

Dated: August 10, 2016
       Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge